IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| PTA-FLA, Inc., et al., ) | |
| ) | |
| Plaintiffs, ) | C/A No.: 3:14-cv-01312-TLW |
| ) | |
| vs. ) | |
| ) | |
| Huawei Technologies USA, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION AND ORDER**

The Plaintiffs, PTA-FLA Inc., NTCH Inc., NTCH-Colorado LLC, NTCH-CA Inc., NTCH-WA Inc. (collectively the "Plaintiffs"), filed this declaratory judgment action on April 10, 2014 against the Defendant, Huawei Technologies USA, Inc. ("Defendant"). (Doc. #1). This matter is now before the Court for consideration of the Plaintiffs' Motion for Preliminary Injunction (Doc. #5) and the Defendant's Motion to Compel Arbitration (Doc. #10).

The Plaintiffs filed a Motion for Preliminary Injunction on April 11, 2014 seeking an Order from this Court enjoining an arbitration proceeding (the "Arbitration") filed with the American Arbitration Association ("AAA") by the Defendant against the Plaintiffs. (Doc. #5). The Defendant responded by filing a Motion to Compel Arbitration on May 8, 2014. (Doc. #10). The Plaintiffs filed a Response in Opposition to Defendant's motion on May 22, 2014 (Doc. #14), to which the Defendant replied on June 2, 2014 (Doc. #17).

On June 19, 2014, this Court held a hearing on Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion to Compel Arbitration, wherein counsel for both parties presented arguments. (Doc. #22). The Court has carefully considered the arguments, pleadings, motions, memoranda, and exhibits of the parties. The Plaintiffs' Motion for Preliminary Injunction and the Defendant's Motion to Compel Arbitration are now ripe for disposition.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs initiated this declaratory judgment action against the Defendant on April 10, 2014 seeking a declaration that the Defendant is not a party to a Supply Contract entered into on December 31, 2008 (the "Supply Contract") by the Plaintiffs and an entity known as Futurewei Technologies ("Futurewei"), involving the purchase by the Plaintiffs of telecommunications infrastructure equipment and services. (Doc. #1). Simultaneous with the filing of the Complaint, the Plaintiffs also filed a motion for preliminary injunction requesting that this Court enjoin the Defendant from pursuing an arbitration proceeding that has been commenced with the AAA (the "Arbitration"). (Doc. #5). The Defendant then filed a Motion to Compel Arbitration requesting an Order compelling the Plaintiffs to participate in the Arbitration. (Doc. #10).

The following facts are undisputed. The Plaintiffs entered into the Supply Contract on December 31, 2008 with Futurewei Technologies for telecommunications equipment and services to be purchased by the Plaintiffs and provided to the Plaintiffs by Futurewei. (Doc. #14-1). Article 18.2 of the Supply Contract contains a mandatory broad-form arbitration clause, which provides as follows:

> All disputes, controversies or claims arising out of or in connection with or in relation to this Contract of [sic] its negotiation, performance, breach, existence or validity, whether contractual or tortious, shall be first escalated to the highest domestic officer of each company to meet and resolve then submitted to the American Arbitration Association for arbitration, under its rules as in force and effect on the date of this Contract. The place of the arbitration shall be as mutually agreed by the parties.

(Doc. #10-2 at 5).

There is no dispute that the Supply Contract is valid and enforceable, nor is there any dispute that the Supply Contract's arbitration provision is enforceable. It is also uncontested that the Arbitration that has been commenced with the AAA by the Defendant is predicated upon the 2008 Supply Contract, and that the dispute raised in the Arbitration relates to equipment and

services that the Plaintiffs did order and receive under the Supply Contract.[1]  It is also uncontradicted that many of the Purchase Orders for equipment and services which are at issue in the Arbitration were submitted by the Plaintiffs directly to the Defendant, Huawei Technologies USA, Inc.  (Doc. #10-4).  Moreover, in the June 19, 2014 hearing, the Plaintiffs conceded that the dispute at issue in the Arbitration falls within the scope of the 2008 Supply Contract's arbitration provision.

In late 2011, Futurewei restructured its business into three separate but affiliated companies: Futurewei; Huawei Technologies USA, Inc.; and Huawei Device USA.  (Docs. #10-3 at 2–3; #10 at 5).  Futurewei, the original signatory with the Plaintiffs to the 2008 Supply Contract for infrastructure equipment and services, provided email notification to the Plaintiffs explaining the restructuring of the Futurewei business model.  (Doc. #10).  More specifically, Futurewei stated in a November 16, 2011 email to the Plaintiffs that Futurewei's business on that date included sales of three different categories of products: infrastructure equipment and services; terminal products; and R&D.  (Doc. #10-3 at 2).  The email further explained that beginning on December 1, 2011, Futurewei would separate into three separate but affiliated companies, such that Futurewei would only operate R&D business; Huawei Technologies USA, Inc. would operate infrastructure equipment sales and business; and Huawei Device USA would operate terminal sales.  (Doc. #10-3 at 2).

As the December 31, 2008 Supply Contract entered into by the Plaintiffs concerns the purchase of infrastructure equipment, Futurewei also informed the Plaintiffs in a November 15, 2011 email, that on December 1, 2011, Huawei Technologies USA, Inc. would be assigned the 2008 Supply Contract by Futurewei and Huawei would then begin providing the Plaintiffs with

---

[1] The Arbitration initiated by the Defendant against the Plaintiffs is predicated upon the Defendant's allegation that the Plaintiffs failed to pay for over $1.1 million of equipment and services that it ordered and received from the Defendant pursuant to the 2008 Supply Contract.  (Doc. #17 at 2).

"Huawei products, services, and support." (Doc. #10-3 at 3). The email indicated that the purpose of restructuring into three separate businesses was "to improve [Futurewei's] efficiency and to provide [the Plaintiffs] with better service." (Doc. #10-3 at 3).

The November 15, 2011 email to the Plaintiffs stated that "this change should require minimum effort on your part," and that the "only adjustments" Futurewei requested the Plaintiffs make regarding purchases under the 2008 Supply Contract "concerned addresses for purchase orders and the name of the recipient for payment of invoices." (Doc. #10-3 at 3). Specifically, Futurewei requested that, beginning on December 1, 2011, the Plaintiffs "address purchase orders to [Huawei] Technologies," and "remit all payments to [Huawei] Technologies." (Doc. #10-3 at 3).

The Plaintiffs and the Defendant have continued to do business with one another under the 2008 Supply Contract since the restructuring of Futurewei Technologies described above. In addition, the Plaintiffs did comply with the adjustments noted above that were requested in the November 15, 2011 email.

## **PRELIMINARY INJUNCTION: LEGAL STANDARD OF REVIEW**

This Court will first address the Plaintiffs' Motion for Preliminary Injunction. (Doc. #5). The Plaintiffs seek injunctive relief in the form of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court "involving the exercise of very far-reaching power" and should "be granted only sparingly and in limited circumstances." Sun Microsystems, Inc. v. Microsoft Corp., 333 F.3d 517, 524 (4th Cir. 2003), abrogated on other grounds by eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).

A plaintiff seeking a preliminary injunction must establish each of the following four elements: (1) the likelihood that the plaintiff will succeed on the merits; (2) the likelihood of irreparable harm to the plaintiff if the injunction is not granted; (3) that the balance of equities

tips in favor of the plaintiff; and (4) that the injunction is in the public interest. Winter v. Natural Res. Council, Inc., 555 U.S. 7, 19–20 (2008); Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010), overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).[2]  Moreover, a plaintiff must demonstrate more than the mere "possibility" of irreparable harm because injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief. See Real Truth, 575 F.3d at 346 (citing Winter, 555 U.S. at 19–22).

## PRELIMINARY INJUNCTION: DISCUSSION

After careful consideration, this Court finds that the Plaintiffs have not established each of the four elements set forth in Real Truth About Obama required for the issuance of a preliminary injunction.

The Plaintiffs have not established that they are likely to succeed on the merits of this case, that the absence of injunctive relief will cause them irreparable harm, that the balance of equities tip in the Plaintiffs' favor, or that granting a preliminary injunction under the circumstances presented in this case would be in the public interest. As discussed below in connection with the Defendant's Motion to Compel Arbitration, the Plaintiffs have not demonstrated that they are likely to succeed on the merits of this declaratory judgment action, in which they seek to permanently enjoin the pending Arbitration and as well as an Order from this Court finding that the Defendant is not a party to the 2008 Supply Contract. Rather, as discussed below, the Court finds that the pending Arbitration is appropriate and should proceed. Additionally, the Plaintiffs argue they will be irreparably harmed if this Court does not enjoin the Arbitration because it will be costly. The Court is not persuaded. Rather, the Court concludes

---

[2] In light of the Supreme Court's decision to vacate Real Truth About Obama on other grounds, the Fourth Circuit Court of Appeals expressly reissued the portions of that opinion that articulated the revised preliminary injunction standard. See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 607 F.3d 355, 355 (4th Cir. 2010).

5

that enjoining the pending Arbitration would instead cause the Defendant to suffer irreparable harm as the Defendant would not have a remedy for the Plaintiffs' alleged breach of the Supply Contract.  Moreover, the Court finds that the balance of equities tips in favor of the Defendant rather than the Plaintiffs.  There is little, if any, inequity in the Court enforcing an arbitration provision in a contract to which the Plaintiffs are indisputably parties.

In sum, having carefully considered the four factors set forth in Real Truth, the Court concludes that the Plaintiffs have not shown that they are entitled to a preliminary injunction.  Accordingly, the Plaintiffs' Motion for Preliminary Injunction is denied. (Doc. #5).

## MOTION TO COMPEL ARBITRATION: ISSUE OF ARBITRABILITY

The Court will next address the Defendants' Motion to Compel Arbitration.  (Doc. #10). As a threshold matter, this Court concludes that the arbitrability issue presented in the instant case is a question for the Court to decide, rather than the arbitrator.

The Defendant argues that the Supply Contract contains a broad-form arbitration clause that reserves for the arbitrator the issue of arbitrability of a dispute.  For support, the Defendant cites to the language in the arbitration provision which states that all disputes relating to the "existence or validity" of the Supply Contract are questions to be submitted to the arbitrator.

The Defendant further points to the incorporation of the AAA rules in place at the time the Supply Contract was executed into the arbitration provision as evidence of an intent to submit the arbitrability issue to the arbitrator. (Doc. #10 at 14–16).  Citing two cases, Saxa, Inc. v. DFD Architecture, Inc., 312 S.W.3d 224, 229–31 (Tex. App. 2010) and Petrofac, Inc. v. DynMcDermott Petro. Ops. Co., 687 F.3d 671, 675 (5th Cir. 2010), the Defendant argues that the incorporation of the AAA rules, along with the plain language of the arbitration provision, evidence that the parties to the Supply Contract "clearly and unmistakably" committed the question of arbitrability to the arbitrator rather than the court.

6

The Plaintiffs, however, contend that the issue of arbitrability is one for this Court to decide. (Doc. #14 at 11–14). The Plaintiffs argue that the incorporation of nonspecific AAA rules, of which there were approximately 177 at the time the contract was executed in 2008, is not sufficient to demonstrate a clear and unmistakable intent to submit the arbitrability issue to the arbitrator. Moreover, the Plaintiffs assert that the language of the arbitration provision, which states that the parties agree to arbitrate "[a]ll disputes, controversies or claims arising out of or in connection with or in relation to this Contract of its negotiation, performance, breach, existence or validity," does not expressly contemplate arbitration for the resolution of disputes about who is a party to the Supply Contract, which is essentially the issue before this Court in the instant case. (Doc. #14 at 15). The Plaintiffs argue that they are not asserting any challenge to the "existence or validity" of the Supply Contract, but instead they contest that Defendant Huawei is a party to the contract or is otherwise entitled to enforce the arbitration provision.

After careful consideration, the Court concludes that the issue of arbitrability in the above-captioned case is a question for this Court to decide. Generally, "absent unmistakable evidence that the parties intended to the contrary, it is the courts rather than the arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists. Whether an arbitration agreement is binding on a *nonparty* is one of those gateway matters." Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Trust, 249 S.W.3d 34, 40 (Tex. App. 2007) (emphasis added) (quoting In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005)); see also In re Ford Motor Co., 220 S.W.3d 21, 23 (Tex. App. 2006).

The Court finds that the specific language of the arbitration provision in the 2008 Supply Contract does not provide clear and unmistakable evidence of the reservation of arbitrability issues for the arbitrator. The Court will therefore apply the general rule that, in the absence of clear and unmistakable evidence that the parties agreed otherwise, the question of arbitrability, that is, whether an agreement to arbitrate exists between the parties, is an issue for the Court, not

the arbitrator, to decide.  See, e.g., Petrobas Am., Inc. v. Vicinay Cadenas, S.A., 921 F. Supp. 2d 685, 693 (S.D. Tex. 2013) ("Under [Supreme Court precedent], whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties."  quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)) (internal quotations omitted); California Fina Grp., Inc. v. Herrin, 379 F.3d 311, 315–16 (5th Cir. 2004).

Moreover, after careful review, and in light of the express terms of the arbitration provision in the Supply Contract, the Court finds that the mere reference to the AAA rules does not provide clear and unmistakable evidence of the parties' delegation of issues of arbitrability to the arbitrator.  See, e.g., Petrobas Am., Inc., 921 F. Supp. at 693.

Accordingly, because the parties have not "clearly and unmistakably" agreed in the 2008 Supply Contract to arbitrate the issue of arbitrability, the Court will determine the question of arbitrability.

## **MOTION TO COMPEL ARBITRATION: LEGAL STANDARD OF REVIEW**

To compel arbitration, a defendant must demonstrate: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the plaintiff to arbitrate the dispute.  See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002).  "To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim."  J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988)).

**MOTION TO COMPEL ARBITRATION: DISCUSSION**

Applying the aforementioned standard to the instant case, it is clear that there is a dispute between the parties and that the Plaintiffs have refused to arbitrate that dispute, as shown by the Plaintiffs' filing of the instant federal lawsuit and motion to enjoin the pending Arbitration proceeding. It is likewise uncontested that the transactions in question in this matter touch interstate commerce. The first, third, and fourth prongs of the above-cited standard are therefore satisfied. The crucial remaining element is whether there exists a contract or written agreement that includes an arbitration provision that purports to cover the dispute between the parties.

The Plaintiffs do not dispute that they entered into the Supply Contract on December 31, 2008 with Futurewei Technologies ("Futurewei"), which is a separate but affiliated entity from the Defendant Huawei. Moreover, the Plaintiffs do not contest that the Supply Contract contains a broad arbitration clause. Nor do the Plaintiffs argue that the dispute at issue in the Arbitration is not covered by that arbitration clause. In fact, the Plaintiffs conceded in the June 19 hearing that they would be bound under the Supply Contract to arbitrate the disputes at issue in the pending Arbitration had that Arbitration been initiated by Futurewei, the original signatory to the December 31, 2008 Supply Contract with the Plaintiffs, rather than by the Defendant Huawei.

Rather, the Plaintiffs argue that the Defendant Huawei is not a party to the Supply Contract, and that any attempted assignment of Futurewei's rights under the Supply Contract to the Defendant Huawei was ineffective. Therefore, the Plaintiffs contend, the Defendant Huawei has no standing to enforce the Supply Contract or its arbitration provision. In short, the only issue remaining before this Court is whether the Defendant Huawei, a non-signatory to the Supply Contract containing the arbitration provision, is entitled to arbitrate a dispute that arises out of the contract against the Plaintiffs.

The Plaintiffs clearly misinterpret the plain language of the 2008 Supply Contract when they state in their Memorandum (Doc. #5-1 at 2) that: "the Supply Contract prohibits assignment

of either parties' rights thereunder without the other parties' written consent. Plaintiffs did not consent to any assignment of rights by Futurewei to Huawei. Accordingly, Huawei is not an assignee to Futurewei's rights under the Supply Contract." (Doc. #5-1 at 2). In this respect, the Plaintiffs' argument focuses on the lack of consent to the alleged assignment of the rights under the Supply Contract of Futurewei to the Defendant Huawei. However, the Plaintiffs' argument misses the mark.

Article 15.1 of the Supply Contract expressly governs the assignment of "rights" and "obligations" arising under the contract, and that section specifically provides that: "either Party is allowed to assign the *rights* created hereunder with a *written notice* to the other Party." (Doc. #10-2 at 4) (emphasis added). The plain language of the Supply Contract requires *only written notice* to the other party to properly accomplish a valid assignment of *rights*—no prior written consent is required. Pursuant to the express terms of Article 15.1 of the Supply Contract, only the assignment of contract *obligations* requires "*prior written consent* of the other Party," and, pursuant to the contract, "[s]uch consent is not to be unreasonably withheld, conditioned, or delayed." (Doc. #10-2 at 4) (emphasis added).

Accordingly, whether the Supply Contract is enforceable between the Defendant Huawei (as Assignee of Futurewei's contract *rights*) and the Plaintiffs is dictated by whether Futurewei's assignment of the *rights*, not obligations, under the Supply Contract, to the Defendant Huawei was proper and effective. As noted, the plain language of Article 15.1 of the 2008 Supply Contract is clear that all that was required to make a proper assignment of Futurewei's rights under the contract to the Defendant Huawei was written notice to the Plaintiffs of the assignment. Moreover, the Court concludes that the arbitration provision in the Supply Contract at issue in the instant case is a "right" under the contract, and not an "obligation," as discussed below.

### Written Notice

As noted, "written notice to the other party" is all that is required pursuant to Article 15.1 of the Supply Contract for one party to effectively assign its "rights" created under the Supply Contract to a third party. (Doc. #10-2 at 4). After careful consideration, the Court finds that Futurewei did properly assign its "rights" under the Supply Contract to the Defendant Huawei.

On November 15, 2011, Futurewei first provided written notice to the Plaintiffs of the intended assignment to Defendant Huawei by way of email correspondence. (Doc. #10-3 at 2–3). The Plaintiffs replied to Futurewei's November 15, 2011 email with a specific question about the assignment and the restructuring of Futurewei. (Doc. #10-3 at 2). In turn, Futurewei responded to the Plaintiffs question on November 16, 2011 with more detailed information about the particulars of the restructuring and business model. (Doc. #10-3 at 2).

In addition, Futurewei provided the Plaintiffs with a Letter dated November 7, 2011, regarding the "Assignment of Sales Contract." (Doc. #10-3 at 5). In the November 7, 2011 Letter, Futurewei provided the Plaintiffs with more specific information about Futurewei's restructuring, specifically notified the Plaintiffs of Futurewei's assignment of the Supply Contract to Defendant Huawei, and also requested that the Plaintiffs sign and return the second page of the Letter, which is a "Consent to the assignment to Assignee [Defendant Huawei] by Assignor [Futurewei] of *liabilities and obligations* under the Contract." (Doc. #10-3 at 5) (emphasis added).

The Plaintiffs argue that Futurewei's written notice of assignment fails because email correspondence is not considered "notice" under Article 23.1 of the Supply Contract. The Court disagrees. While as a technical matter email correspondence is not one of the provided for methods of providing notice under Article 23.1 of the Supply Contract, the Court finds that, based on the facts and circumstances in this case, Futurewei substantially complied with the Notice provision such that it did properly provide written notice of the assignment to the

Plaintiffs. Moreover, the record makes clear that the Plaintiffs did in fact receive the November 15, 2011 email correspondence regarding the intended assignment, as a Reply email was sent by the Plaintiffs to Futurewei on the same day. In addition, the Court concludes that Futurewei made a good faith attempt to provide written notice within the meaning of the Supply Contract, and that notice was in fact received by the Plaintiffs; therefore, the essential purpose of the Notice provision was accomplished. The lack of precise compliance with the Notice term does not render the email correspondence ineffective as written notice for purposes of assigning Futurewei's rights under the Supply Contract to Defendant Huawei.

The Court concludes that the heretofore described written notices, letters, and correspondence constitute sufficient "written notice" of Futurewei's assignment of rights to Defendant Huawei within the meaning of Article 15.1 of the Supply Contract.

Taken together, the November 15, 2011 email, November 16, 2011 emails, and November 7, 2011 letter, along with the parties' course of performance following those notices, lead the Court to conclude that written notice was provided to the Plaintiffs of Futurewei's assignment of rights to the Defendant Huawei. Therefore, after careful consideration of the record, the Court finds that a valid assignment of rights occurred and thus Defendant Huawei is an Assignee of Futurewei's rights created under the December 31, 2008 Supply Contract with the Plaintiffs.

## **Is Arbitration a Right or an Obligation?**

In light of the Court's finding that Defendant Huawei is an Assignee of Futurewei's rights created under the December 31, 2008 Supply Contract, the determinative question in this case becomes whether the ability to invoke the remedial arbitration provision in the Supply Contract is a "right" or an "obligation." If arbitration under the Supply Contract is a right, then Defendant Huawei as Assignee is entitled to enforce the arbitration provision against the Plaintiffs.

The language of the Supply Contract specifically distinguishes "rights" from "obligations" and how each may be assigned to a third party assignee. Specifically, pursuant to Article 15.1 of the contract, "rights" may be assigned upon written notice to the other Party, while "obligations" may only be assigned with the prior written consent of the other Party.

The Plaintiffs assert that arbitration should be considered an "obligation" rather than a "right" as arbitration is costly and puts pressure on a party "to do something." The Defendant, on the other hand, argues that arbitration should be considered a "right" that flows from the enforcement of a corresponding right under the Supply Contract. More specifically, the Defendant argues that, as Assignee of Futurewei's *rights*, there is no question that Defendant Huawei holds the right to receive payment for goods and services provided to the Plaintiffs under the Supply Contract. (Doc. #10 at 9, 11). Therefore, because the Defendant has the right to be paid for goods and services rendered under the contract, the Defendant argues it also holds the corresponding right to arbitrate disputes with the Plaintiffs that arise out of the right to be paid, pursuant to the remedial arbitration provision in the contract. (Doc. #10 at 9, 11).

After careful consideration and review, the Court concludes that the arbitration provision in the Supply Contract contemplates a "right" to arbitrate disputes arising out of the contract, which was effectively assigned to the Defendant by Futurewei when written notice of the assignment was provided to the Plaintiffs on November 15, 2011. There is a legal distinction between a "right" and an "obligation" under a contract or an agreement. An assignment of "rights" refers to the transfer of the "right to receive the other party's contractual obligation." 1 Hawkland, UCC Series § 2-210:1. An assignment of "obligations" "refers to the transfer of the obligation to perform one's own contractual obligation." Id.

Generally speaking, an assignment of contract "rights" alone, and not "obligations," does not entail any duty of performance on behalf of the assignee. See Banque de Paris et des Pays-Bas v. Amoco Oil Co., 573 F. Supp. 1464, 1470 (S.D.N.Y. 1983). Instead, the Assignor of the

13

"rights" would still be bound under the contract to perform its contractual "obligations." See id.; see also U.C.C. § 2-210 (1977). For example, in a sales contract, a seller may assign its *right* to receive the buyer's contractual obligation to pay, as was done in the instant case when Futurewei assigned its *right* to receive the Plaintiffs' contractual obligation to pay under the Supply Contract. All that the 2008 Supply Contract requires for Futurewei to effectively assign its *rights* under the contract is written notice to the Plaintiffs. Similarly, in a sales contract, a buyer, like one of the Plaintiffs, may assign its *right* to receive the seller's contractual obligation to deliver conforming goods. Moreover, a seller to a sales contract may assign its own contractual *obligation* to deliver conforming goods to a third party, and a buyer may assign its *obligation* to render payment for those goods. However, the plain language of the Supply Contract entered into by the Plaintiffs requires that a Party must obtain prior written consent from the other Party to make a valid assignment of an *obligation* arising under the contract. This legal distinction between "rights" and "obligations," which was memorialized in the 2008 Supply Contract, makes practical sense—an assignment of a contractual "obligation," such as the obligation of a party to a sales contract to deliver conforming goods to the buyer, would have the potential to materially change the parties' original agreement. Thus, it follows that the assignment of such an obligation would require the prior written consent of the other party. However, an assignment of a contractual "right," such as the right of a party to a sales contract to monetary payment, generally would not materially change the parties' original agreement. See, e.g, Restatement (Second) of Contracts § 336 (1981).

The Court finds recent case law on this issue both instructive and persuasive. "[T]he case law supports the basic principle that an *assignee* or other party whose *rights* are premised on a contract is bound by the remedial provisions bargained for between the original parties to the contract." Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG, 970 F. Supp. 2d

157, 169 (S.D.N.Y. 2013) (emphasis added) (quoting Banque de Paris et des Pays-Bas v. Amoco Oil Co., 573 F. Supp. 1464, 1468 (S.D.N.Y. 1983) (internal quotations omitted)).

Recently, the Fifth Circuit Court of Appeals addressed the issue of whether an assignment of contractual rights was valid, thus allowing a nonparty to the contract to file suit for alleged nonpayment under the contract. See Tekelec, Inc. v. Verint Systems, Inc., 708 F.3d 658, 663 (5th Cir. 2013). In holding there was a valid assignment of rights and that the assignee therefore had a right to enforce its rights under the agreement, the court stated that the argument against recognizing the assignment "misses the obvious additional enforcement right inherent with *any* contract: the right to [a remedy] for breach." Tekelec, 708 F.3d at 663. The Court held that the assignee of the contractual rights "succeeded to . . . the *right to [a remedy] for nonpayment* . . . by virtue of the assignment of *rights*." Id. (emphasis added). The Fifth Circuit further explained that, under Texas Law, "it is axiomatic that an assignee . . . stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment. Moreover, the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the [debtor's] obligation." Id. at 663 n.4 (quoting Thweatt v. Jackson, 838 S.W.2d 725, 728 (Tex. App. 1992)).

Furthermore, in making the determination as to whether an arbitration agreement will extend to an assignee of rights, the Uniform Commercial Code (the "U.C.C.") provides helpful guidance. See Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG, 970 F. Supp. 2d 157, 169 (S.D.N.Y. 2013). The U.C.C.'s definition of "rights" specifically includes "remedies." U.C.C. § 1-201(36). Moreover, the U.C.C. "makes explicit . . . that the rights of an assignee are subject to . . . all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom. This principle applies to arbitration provisions, which would be of no value if a party could escape the effect of such a clause by assigning a claim subject to arbitration between the original parties to a third party. *Even an assignment only*

*of contract 'rights' not entailing any duty of performance must be deemed to include the bargained-for remedial procedure."* Id. (quoting Banque de Paris, 573 F. Supp. at 1470); see also In re Lowenthal, 191 N.Y.S. 282, 285 (1921) ("[W]here a contract is assignable, the arbitration clause is an integral part thereof, and may be availed of by either party to the contract or by his legal representatives or assigns.  The agreement to arbitrate contained in the contract [was] founded upon valuable consideration between the original parties thereto, arising from reciprocal agreement, and hence [is] not revocable at the whim of either party.  If the arbitration clause of an assignable contract of sale is not available, except as to the parties to such a contract, it would then be a simple matter, if either party sought to escape the effect of such a clause, to assign the contract to a third party.").

The Court therefore concludes that the Defendant has a right to arbitrate disputes that arise out of the Supply Contract with the Plaintiffs.  The Defendant is seeking to enforce its rights under the Supply Contract as Assignee, including rights against the Plaintiffs that arise from the Supply Contract between Assignor Futurewei and the Plaintiffs.  The Plaintiffs are bound by the Supply Contract's remedial provision requiring the arbitration of disputes, including disputes with the Defendant Huawei, notwithstanding its attempt to disclaim arbitration as an obligation, duty, or liability, of which it did not consent to Futurewei's assignment to Huawei.

### Equitable Estoppel

Even if the assignment of rights by Futurewei to Defendant Huawei was ineffective, or if the arbitration provision is not a "right" but instead an "obligation" in the Supply Contract, neither of which is a conclusion reached by this Court, this Court still grants that the Defendant's Motion to Compel Arbitration because the Plaintiffs are equitably estopped to deny that Defendant Huawei is entitled to enforce the arbitration provision in the Supply Contract against the Plaintiffs.

"[I]n certain limited instances, pursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can compel arbitration against a signatory-plaintiff." Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 526 (5th Cir. 2000). "The linchpin for equitable estoppel is equity—fairness." Id. at 528.

The doctrine of equitable estoppel precludes one party to a contract from claiming some benefits of a contract while simultaneously attempting to avoid other provisions. See Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir. 2004). "In short, although arbitration is a matter of contract and cannot, in general, be required for a matter involving an arbitration agreement non-signatory, a signatory to that agreement *cannot* . . . 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny arbitration's applicability because the defendant is a non-signatory." Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 528 (5th Cir. 2000) (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)). "[T]o allow such inconsistent positions would be inequitable, to say the least." Id.; see also Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp., 659 F.2d 836, 838–39 (7th Cir. 1981).

Attached to the Defendant's Motion to Compel is an Exhibit showing Plaintiffs, through counsel, invoked the arbitration provision in the Supply Contract specifically with respect to Defendant Huawei shortly after Defendant Huawei filed a Demand for Arbitration with the AAA. (Doc. #10-10 at 2). More specifically, in an email dated March 17, 2014, the Plaintiffs communicated to Defendant Huawei that:

> Pursuant to Article 18.2 of the Supply Contract [the "Arbitration Provision"] referenced in your Demand, prior to initiating arbitration, all disputes 'must be escalated to the highest domestic officer of each company to meet and resolve.' I understand that this has not yet occurred. We intend to seek a stay of the arbitration on the grounds that a condition precedent to arbitration has not been met. I wanted to give you a heads up to see if your client would like to comply

      with this provision voluntarily.  If so, it would probably make sense to postpone the Wednesday meeting with the AAA.

(Doc. #10-10 at 2).

      A reasonable inference to be drawn from the language quoted above is that Plaintiffs did in fact know that there had been an assignment of rights to the Defendant Huawei, and that the Plaintiffs understood that the arbitration provision was enforceable against the Plaintiffs by the Defendant Huawei.  Following the March 17, 2014 email, the Defendant's did in fact conduct an in-person meeting between the President of the Defendant's Company and the President of the Plaintiff companies.  The Court finds that the Plaintiffs are estopped from asserting that they did not have a contractual relationship with the Defendant or that the assignment of rights under the contract by Futurewei to the Defendant was ineffective.  The Plaintiffs received a direct benefit as a result of the Supply Contract from the Defendant, and, moreover, the Plaintiffs invoked the technical aspects provided for in the very arbitration provision as to the Defendant that Plaintiffs now argue is unenforceable.

      Moreover, the Plaintiffs' course of performance for the years following the November 2011 assignment is further evidence that the Plaintiffs invoked direct benefits under the Supply Contract in doing business with Defendant Huawei.  The Plaintiffs cannot have it both ways.[3]

      Accordingly, the Court concludes that the Plaintiffs are equitably estopped to deny that the Defendant Huawei is an Assignee of the December 31, 2008 Supply Contract, and stands in the shoes of Assignor Futurewei.  Defendant Huawei is therefore entitled to enforce the

---

[3] The Texas Supreme Court has applied equitable estoppel in the assignment context "to prevent a signatory plaintiff from 'having it both ways.'" Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist., 387 S.W.3d 99, 105 (Tex. App. 2012) (citing Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 307–08 (Tex. 2006)).  In Meyer, the Texas Supreme Court reversed the appellate court and district court and "held arbitration to be proper between the signatory (buyer) and the nonsignatories (manufacturer and assignee) because the buyer was 'asserting rights that it would not have but for the Purchase and Sales Agreement, but refusing to honor its agreement to arbitrate disputes over those rights.'" Cotton Commercial, 387 S.W.3d at 105 (quoting Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 307–08 (Tex. 2006)).

arbitration provision contained in Article 18.2 of the contract against the Plaintiffs, and has a right to arbitrate disputes with the Plaintiffs that fall within the scope of that provision.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that the Plaintiffs' Motion for Preliminary Injunction (Doc. #5) is hereby **DENIED**; the Defendant's Motion to Compel Arbitration (Doc. #10) is hereby **GRANTED**; and the above-captioned case is hereby **DISMISSED** in its entirety.  See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that dismissal, as opposed to a stay pending arbitration, is proper "when *all* of the issues raised in the district court must be submitted to arbitration"); see also Aviles v. Russell Stover Candies, Inc., No. 12-11227, 2014 WL 1328187 at *2 (5th Cir. Apr. 4, 2014).

**IT IS SO ORDERED.**

s/ Terry L. Wooten  
TERRY L. WOOTEN  
Chief United States District Judge

July 2, 2014  
Columbia, South Carolina